UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:22-CR-00136-01** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **TRUMAINE CORNELIUS ROLLINS (01)** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court is a Motion to Vacate and Request for an Evidentiary Hearing [Doc. No. 73], and a Motion to Access, Obtain, and View Sealed Documents [Doc. No. 74] filed by *pro se* Defendant, Trumaine Rollins ("Defendant"). The United States of America ("the Government") opposes the Motion to Vacate [Doc. No. 77]. Defendant did not file a reply. After carefully considering the parties' filings and applicable law, Defendant's Motions are **DENIED**.

**I.    Background**

On April 21, 2022, a Ruston Police Department Officer initiated a traffic stop against Defendant for allegedly speeding.[1] After a chase, Defendant was apprehended and detained.[2] Defendant then consented to have his vehicle searched and never revoked this consent.[3] The search revealed a firearm, several grams of marijuana, a digital weighing scale, and several small plastic bags similar to those used to package marijuana.[4]

---

[1] [Doc. No. 34-2, p. 1].
[2] [Id.].
[3] [Id.].
[4] [Id. at p. 2].

On December 8, 2022, Defendant pled guilty to possession of a firearm by a felon (in violation of 18 U.S.C. § 922(g)(1)) and possession of a firearm in furtherance of drug trafficking (in violation of 18 U.S.C. § 924(c)(1)), which were counts one and three of the indictment, respectively.[5] On September 6, 2023, the Court sentenced Defendant to 120 months imprisonment as to count one and 60 months imprisonment as to count three, to run consecutively.[6] The judgment became final on September 21, 2023, fourteen days after the judgment was entered (the period for filing an appeal).[7]

On January 5, 2026, Defendant filed the instant Motions.[8] Defendant argues the September 2023 judgment should be vacated pursuant to Title 28, United States Code, § 2255, which allows federal prisoners, like Defendant, to collaterally attack their sentences.[9] Specifically, he argues the Government failed to provide him exculpatory material—dashcam footage of his arrest—before his guilty plea, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).[10]

The parties briefed all relevant issues, and the matter is ripe.

## II.     Law and Analysis

Section 2255 allows courts to vacate sentences "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of

---

[5] [Doc. No. 34-3, pp. 1–2].
[6] [Doc. No. 54, p. 2].
[7] [Doc. No. 77, p. 3 (citing *United States v. Plascencia*, 537 F.3d 385, 388 (5th Cir. 2008))].
[8] [Doc. Nos. 73; 74].
[9] [Doc. No. 73].
[10] [Id. at p. 1].

limitations to seek post-conviction relief. *Id.* § 2255(f). AEDPA's limitation period begins on the "latest" of:

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; *or*
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* (emphasis added).

The Government argues Defendant's Motion is untimely because it was filed well over a year after his judgment of conviction became final.[11] Defendant, as noted above, has not filed a reply. But based on the nature and substance of his Motion, he would seemingly rely on the fourth prong—due diligence. So out of an abundance of caution, the Court analyzes both.[12]

### A. Date of Judgment's Finality

A judgment becomes final "when [the U.S. Supreme Court] affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527

---

[11] [Doc. No. 77, p. 3].
[12] Neither Defendant nor the Government suggest there was any impediment to Defendant filing a habeas petition, so § 2255(f)(2) does not apply. Similarly, neither party suggests Defendant's Motions rely on a right that the Supreme Court newly recognized, so § 2255(f)(3) also does not apply.

(2003). If a defendant does not file a notice of appeal, his conviction becomes when the period for filing an appeal expires. *United States v. Plasencia*, 537 F.3d 385, 388 (5th Cir. 2008).

Defendant's judgment was entered into the record on September 7, 2023.[13] Defendant had fourteen (14) days since that date to file a notice of appeal. FED. R. APP. 4(b). As such, Defendant's deadline to file a notice of appeal to the Fifth Circuit expired on September 21, 2023. Defendant filed no notice of appeal and so, his judgment became final on September 21, 2023. Consequently, Defendant's deadline to file a petition under § 2255 expired on September 21, 2024: one year after Defendant's judgment became final.

Thus, Defendant's Motion is untimely under § 2255(f)(1).

### B. Due Diligence

Even if a defendant's motion is filed after a year since the judgment became final, it may still be allowed if it meets any of the other prongs in § 2255(f), such as the due diligence prong.

Under the due diligence prong, Defendant "has the burden of persuading the court that he has exercised due diligence in his search for the factual predicate of his claim." *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002) (citing *Lott v. Coyle*, 261 F.3d 594, 605–06 (6th Cir.2001)). Merely alleging that Defendant "'did not actually know the facts underlying his ... claim'" is insufficient to show due diligence. *Id.* (quoting *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir.1997)). "Diligence can,

---

[13] [Doc. No. 54].

however, be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging" his conviction. *Johnson v. United States*, 544 U.S. 295, 308 (2005) (citation modified). The Fifth Circuit has held AEDPA's "limitations period begins" on "the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim." *Osborne v. Hall*, 934 F.3d 428, 432 (5th Cir. 2019) (quoting *In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018)).

*Osborne* involved a state prisoner who sought post-conviction relief under § 2554. *Id.* at 430. The defendant's 2004 conviction rested, largely, on the testimony of one Dr. Hayne. *Id.* From 2006–2008, multiple "newspaper and magazine articles" illuminated "Dr. Hayne's lack of qualifications, the large number of autopsies he performed, his potentially unethical business relationship with the State, and his scientifically questionable testimony." *Id.* In 2008, the Innocence Project complained to the Mississippi State Board of Medical Licensure "that Dr. Hayne was unqualified and had provided false autopsy reports and testimony in a variety of cases." *Id.* Dr. Hayne, in response, filed a defamation lawsuit against the Innocence Project. *Id.* This suit resulted in a deposition, which was confidential until May 25, 2012. *Id.* After the deposition became public, Osborne filed a state collateral attack. *Id.* When that door closed, he filed for federal post-conviction relief. *Id.* The Fifth Circuit, in affirming the district court's dismissal of his petition, noted given the availability of information doubting Dr. Hayne as early as 2008, the "factual predicate for [Osborne's] claim

would have been discoverable through the exercise of due diligence more than a year prior to the filing of his federal habeas petition in December 2013." *Id.* at 434.

Here, Petitioner challenges his conviction based on an allegation that the Government did not disclose exculpatory dashcam footage—that illustrates that defendant's stop was racially motivated—in violation of *Brady*.[14] He alleges he discovered this evidence sometime in December 2025, while incarcerated and could not obtain it earlier.[15] The record says otherwise. Defendant's plea agreement includes a written factual basis, which he signed when he pled guilty.[16] In the factual basis, the Government clearly disclosed the same dashcam video that Defendant alleges he recently discovered.[17] Thus, Defendant knew the dashcam, which allegedly would have revealed facts of his racial profiling stop, existed when he signed his plea agreement.[18] As such, he had some "notice" of evidence, "which would support [his] claim," in 2022. *Id.* at 432. So, if Defendant exercised due diligence when he signed his plea agreement, he could have received and reviewed the dashcam footage. He did not do so. Section 2255, therefore, cannot now save his prior "sleep[ing] on [his] rights." *Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999).

Thus, Defendant's Motion is untimely under § 2255(f)(4) as well.

### III. Conclusion

For these reasons,

---

[14] [Doc. No. 73, p. 1].
[15] [Id.].
[16] [Doc. No. 34-2, p. 2].
[17] [Id. at p. 1 n.1].
[18] [Doc. Nos. 32, 34].

Page 6 of 7

**IT IS ORDERED** that Defendant's Motion to Vacate and Request for Evidentiary Hearing [Doc. No. 73] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Access, Obtain, and View Sealed Documents [Doc. No. 74] is **DENIED AS MOOT**.

MONROE, LOUISIANA, this 2nd day of February 2026.

_____
TERRY A. DOUGHTY
UNITED STATES DISTRICT JUDGE